UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MADELEINE BARLOW,

                    Plaintiff,

        v.

STATE OF WASHINGTON d/b/a
Washington State University,

                    Defendant.

CASE NO. C20-5186 BHS

ORDER GRANTING PLAINTIFF'S
RULE 56(D) REQUEST AND
DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Washington State University's ("the University") motion for summary judgment. Dkt. 16. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion without prejudice for the reasons stated herein.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Madeleine Barlow ("Plaintiff") brings claims against the University arising out the University's alleged mishandling of sexual assault claims, in particular with respect to Thomas Culhane ("Culhane").

Culhane was a student at the University. He attended the University's Vancouver, Washington campus ("WSU Vancouver") until spring semester 2017 and subsequently applied to transfer to the University's Pullman campus for fall semester 2017. While Culhane attended WSU Vancouver, the University received two complaints of sexual

misconduct by Culhane. On or about September 29, 2016, WSU Vancouver student Dina Stepanyuk ("Stepanyuk") made a complaint about Culhane harassing her by sexual comments via electronic communications. Dkt. 17-1 at 4. On September 30, 2016, Holly Ashkannejhad, Assistant Director of the University's Office for Equal Opportunity ("OEO"), met with Stepanyuk to discuss the complaint. The University asserts that Stepanyuk did not want a formal investigation and that, per her request, Culhane was advised to cease contact with Stepanyuk. *Id.* at 9, 12, 15–16. Culhane agreed, and the compliant was closed on October 17, 2016. *Id.* at 1.

On November 3, 2016, the University's OEO received another sexual misconduct complaint about Culhane. WSU Vancouver student Quetzali Ramirez ("Ramirez") complained to the University's Police Department that on October 8, 2016, during a student recreational trip, Culhane sat next to her in a University vehicle and put his hands on her legs and in between her thighs, continuing to do so even after she told him to stop. *Id.* at 22–24.  Plaintiff asserts that it took the University ten months to complete the investigation of Ramirez's claims, but the University provides some context to the delay in investigation. It asserts that Ramirez spoke with an OEO representative on November 4, 10, and 14, 2016 and that she indicated she did not feel an investigation was "necessary." *Id.* at 24, 40. The complaint file was subsequently closed on November 21, 2016 but was reopened on March 3, 2017 when the OEO learned from WSU Vancouver Counseling that Ramirez wanted to speak with investigators. *Id.* Ramirez made additional allegations against Culhane, and after an investigation, the OEO determined that Culhane

1    had violated Executive Policy 15, which is related to sexual harassment, and referred the

2    matter to the Office of Student Conduct ("OSC") on June 21, 2017. *Id.* at 38.

3           On July 28, 2017, the OSC held a conduct hearing regarding the allegations made

4    by Ramirez, and Culhane pleaded "not responsible" for all charges. Dkt. 19 at 48. The

5    OSC ultimately found Culhane responsible for violations of student conduct, specifically

6    WAC 504-26-221 (sexual misconduct), WAC 504-26-220 (discrimination and

7    discriminatory harassment), WAC 504-26-227 (sexual harassment), WAC 504-26-209

8    (violation of policy), and WAC 504-26-204 (abuse of others). *Id.* at 49. On August 1,

9    2017, the University suspended Culhane for nine days. *Id.*

10          During this suspension, Plaintiff asserts that Culhane was allowed to transfer to

11   the University's Pullman campus at his own request and that Culhane subsequently

12   moved to Pullman. The University, on the hand, contends that Culhane moved to Pullman

13   on his own accord during this period and that Culhane was still on suspension. The

14   evidence provided shows that Culhane applied to transfer to the University's Pullman

15   campus in May 2017, *id.* at 31, and that his transfer application was approved that same

16   month, *id.* at 5. It is unclear, however, whether the University rescinded its approval for

17   Culhane's transfer after the OSC hearing regarding Ramirez's allegations.

18          Plaintiff also moved to Pullman in early August 2017 in preparation for her

19   freshman year at the University. *Id.* at 12. On August 20, 2017, Culhane raped Plaintiff

20   during a party she attended at his off-campus apartment.

21          On January 28, 2020, Plaintiff filed suit against the University in the Superior

22   Court of the State of Washington for Thurston County, bringing claims for Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX") violations, negligence, and state statutory violations. Dkt. 1-2. On February 28, 2020, the University removed the case to this Court. Dkt. 1.

On October 1, 2020, the University moved for summary judgment. Dkt. 16. On October 19, 2020, Plaintiff responded and requested, in the alternative, the Court continue the University's motion pursuant to Fed. R. Civ. P. 56(d).[1] Dkt. 18. On October 23, 2020, the University replied. Dkt. 22.

## II.   DISCUSSION

The University moves for summary judgment on all of Plaintiff's claims arguing that she cannot maintain her claims as a matter of law because, in part, her injury occurred off-campus where the University exercised no control.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which

---

[1] The Court notes that Plaintiff's response was twenty-seven pages, in excess of the twenty-four page limit prescribed by the Local Rules. W.D. Wash. LCR 7(e)(3). The Local Rules gives the Court discretion to refuse to consider any text not included within the page limits, *id.* at (e)(6), and the University requests that this Court do so, Dkt. 22 at 2. The Court finds that the University would not be prejudiced by the consideration of Plaintiff's full response as the response is an excess of three pages and the excess pages include the introduction, conclusion, and certificate of service. The Court will not exercise its discretion here but reminds Plaintiff to file a motion for leave to file overlength briefing as appropriate.

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

However, if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer

considering the motion, deny the motion, or allow time to obtain affidavits or declarations or to take discovery. Fed. R. Civ. P. 56(d). The nonmovant must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). When confronted with a Rule 56(d) motion, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

**B.     Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Earlier this year, the Ninth Circuit recognized that a plaintiff may bring either an individual Title IX claim or a pre-assault Title IX claim. *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1104–05 (9th Cir. 2020) (en banc). An individual Title IX claim arises from student-on-student or faculty-on-student sexual harassment or assault and the school or university's deliberate indifference to the harassment. *Id.* at 1105. A pre-assault Title IX claim, on the other hand, imposes "Title IX liability when a school's official policy is one of deliberate indifference to sexual harassment in any context subject to the school's control." *Id.* at 1113. The Ninth Circuit held for the first time that to sustain a pre-assault Title IX claim, a plaintiff must show:

1

(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

2

3

4

5

*Id.* at 1112 (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526

6

U.S. 629, 650 (1999)).

7

Here, Plaintiff brings a pre-assault claim against the University for its alleged

8

"deliberate indifference" to sexual harassment and assault, which resulted in Culhane

9

assaulting Plaintiff. *See* Dkt. 18 at 7. The University argues that Culhane was not under

10

its substantial control when he assaulted Plaintiff at this off-campus apartment and that

11

there is no evidence to support Plaintiff's argument that it maintained a policy of

12

deliberate indifference, supporting summary judgment.

13

**C.    State Law Claims**

14

Plaintiff also brings state law claims for negligence and violation of the

15

Washington Law Against Discrimination's ("WLAD") prohibition against discrimination

16

in places of public accommodation. To state a prima facie public accommodation WLAD

17

claim, a plaintiff must show that:

18

(1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

19

20

21

22

ORDER - 7

*Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 853 (2019) (internal citation omitted). Here, Plaintiff argues that the University's conduct in allowing Culhane to transfer to the Pullman campus led to the discrimination, i.e. the sexual assault. Additionally, in terms of negligence, Plaintiff argues that the University owed her a duty to provide for her safety from sexual assault arising from: the University's obligation to not increase the danger to foreseeable victims through its own conduct; Plaintiff's invitee status at a location where the University exercises control; and the University's special relationship with Plaintiff and Culhane.

The University, on the other hand, argues that it is entitled to summary judgment on the WLAD claim for the same reason it is entitled to summary judgment on the Title IX claim—the alleged discrimination occurred at a private residence, and thus the University argues the discrimination did not occur in a place of public accommodation. The University also argues that there is no special duty of care between Plaintiff and the University and that it did not proximately cause her damages because her damages were caused exclusively by Culhane's conduct.

**D.      Rule 56(d)**

Plaintiff asserts that she has not yet had the opportunity to develop the record through discovery on the issues at hand, which precludes the Court's ruling on summary judgment at this time. Dkt. 18 at 25. Plaintiff, through the declaration of her attorney as required by Rule 56(d), asserts that she seeks facts regarding, *inter alia*, policies regarding the University's Title IX program, policies regarding the transfer of students while there is pending disciplinary action, and prior complaints of sexual harassment and

1  assault and their dispositions—all of which go to the University's "deliberate

2  indifference," negligence, or control over Culhane. Dkt. 20, ¶¶ 10–12.

3       The University, on the other hand, argues that Plaintiff has failed to outline what

4  specific facts they expect to find in discovery and how those facts are essential. Dkt. 22 at

5  2. However, in reviewing the submitted affidavit, the Court finds otherwise. Plaintiff has

6  provided specific examples of discovery she seeks and explains how that evidence

7  supports her claims. Discovery has not yet closed at this time, and it appears that the

8  parties are still deeply engaged in the discovery process. *See* Dkt. 20, ¶ 15 (indicating that

9  the University produced documents on October 15, 2020 in the middle of the summary

10  judgment briefing schedule). Plaintiff has satisfied the requirements of Rule 56(d), and

11  the Court therefore grants her 56(d) request and denies the University's motion for

12  summary judgment without prejudice. After the close of discovery, the University may

13  either renote its motion to allow Plaintiff sufficient time to respond or file a new motion.

14                        **III.  ORDER**

15       Therefore, it is hereby **ORDERED** that Plaintiff's Rule 56(d) request is

16  **GRANTED** and the University's motion for summary judgment, Dkt. 16, is **DENIED**

17  **without prejudice**.

18       Dated this 30th day of November, 2020.

19

20

21                        BENJAMIN H. SETTLE
                        United States District Judge

22