1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MADELEINE BARLOW,

               Plaintiff,

    v.

STATE OF WASHINGTON d/b/a
Washington State University,

            Defendant.

CASE NO. C20-5186 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Washington State University's

("the University") re-noted motion for summary judgment. Dkts. 16, 43. The Court has

considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby grants the motion for the reasons stated herein.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Madeleine Barlow ("Plaintiff") brings discrimination claims pursuant to

20 U.S.C. § 1681 ("Title IX"), RCW 28B.110, *et seq.*, and RCW 49.60, *et seq.*, as well as

a negligence claim against the University arising out the University's alleged

mishandling of sexual assault claims, in particular with respect to Thomas Culhane.

Culhane was a student at the University's Vancouver, Washington campus ("WSU Vancouver") until spring semester 2017. He subsequently applied to transfer to the University's Pullman campus for fall semester 2017. While Culhane attended WSU Vancouver, the University received two complaints of sexual misconduct by Culhane. On or about September 29, 2016, WSU Vancouver student Dina Stepanyuk made a complaint about Culhane harassing her by sexual comments via electronic communications. Dkt. 43-3 at 4. On September 30, 2016, Holly Ashkannejhad, Assistant Director of the University's Office for Equal Opportunity ("OEO"), met with Stepanyuk to discuss the complaint. The University asserts that Stepanyuk did not want a formal investigation and that, per her request, Culhane was advised to cease contact with Stepanyuk. *Id.* at 9, 12, 15–16. Culhane agreed, and the compliant was closed on October 17, 2016. *Id.* at 1.

On November 3, 2016, the University's OEO received another sexual misconduct complaint about Culhane. WSU Vancouver student Quetzali Ramirez complained to the University's Police Department that on October 8, 2016, during a student recreational trip, Culhane sat next to her in a University vehicle and put his hands on her legs and in between her thighs, continuing to do so even after she told him to stop. *Id.* at 22–24. Plaintiff asserts that it took the University ten months to complete the investigation of Ramirez's claims, but the University provides some context to the delay in investigation. It asserts that Ramirez spoke with an OEO representative on November 4, 10, and 14, 2016 and that she indicated she did not feel an investigation was "necessary." *Id.* at 24, 40. The complaint file was closed on November 21, 2016 but was reopened on March 3,

1   2017 when the OEO learned from WSU Vancouver Counseling that Ramirez wanted to

2   speak with investigators. *Id.* Ramirez made additional allegations against Culhane, and

3   after an investigation, the OEO determined that Culhane had violated Executive Policy

4   15, which is related to sexual harassment, and referred the matter to the Office of Student

5   Conduct ("OSC") on June 21, 2017. *Id.* at 38.

6        On July 28, 2017, the OSC held a conduct hearing regarding Ramirez's

7   allegations, and Culhane pleaded "not responsible" for all charges. Dkt. 47 at 91. The

8   OSC ultimately found Culhane responsible for violations of student conduct, specifically

9   WAC 504-26-221 (sexual misconduct), WAC 504-26-220 (discrimination and

10  discriminatory harassment), WAC 504-26-227 (sexual harassment), WAC 504-26-209

11  (violation of policy), and WAC 504-26-204 (abuse of others). *Id.* at 92. On August 1,

12  2017, the University suspended Culhane for nine days. *Id.*

13       Plaintiff alleges that Culhane requested to and was permitted to transfer to the

14  University's Pullman campus during this suspension and that, as a result, Culhane moved

15  to Pullman. The evidence shows that Culhane applied to transfer to the University's

16  Pullman campus in May 2017, *id.* at 117, and that his transfer application was approved

17  that same month, *id.* at 6.

18       Plaintiff also moved to Pullman in early August 2017 in preparation for her

19  freshman year at the University. *Id.* at 12. On August 20, 2017, Culhane raped Plaintiff

20  during a party she attended at his off-campus apartment.

21       On January 28, 2020, Plaintiff filed suit against the University in the Superior

22  Court of the State of Washington for Thurston County, bringing claims for violations of

1    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), negligence, and

2    state statutory violations. Dkt. 1-2. On February 28, 2020, the University removed the

3    case to this Court. Dkt. 1.

4        On October 1, 2020, the University moved for summary judgment, Dkt. 16, and

5    Plaintiff requested that the Court continue the University's motion pursuant to Fed. R.

6    Civ. P. 56(d), Dkt. 18. The Court granted Plaintiff's Rule 56(d) request and denied the

7    University's motion without prejudice. Dkt. 28.

8        On March 25, 2021, the University renewed its motion for summary judgment.

9    Dkt. 43. On April 12, 2021, Plaintiff responded. Dkt. 46. On April 16, 2021, the

10   University replied. Dkt. 50.

## II.   DISCUSSION

12       The University moves for summary judgment on all of Plaintiff's claims arguing

13   that she cannot maintain her claims as a matter of law because, in part, her injury

14   occurred off-campus where the University exercised no control.

**A.    Summary Judgment Standard**

16       Summary judgment is proper only if the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material

18   fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

19   The moving party is entitled to judgment as a matter of law when the nonmoving party

20   fails to make a sufficient showing on an essential element of a claim in the case on which

21   the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

22   (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

1  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

2  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

3  present specific, significant probative evidence, not simply "some metaphysical doubt").

4  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

5  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

6  versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

7  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8       The determination of the existence of a material fact is often a close question. The

9  Court must consider the substantive evidentiary burden that the nonmoving party must

10  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

11  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

12  issues of controversy in favor of the nonmoving party only when the facts specifically

13  attested by that party contradict facts specifically attested by the moving party. The

14  nonmoving party may not merely state that it will discredit the moving party's evidence

15  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

16  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

17  nonspecific statements in affidavits are not sufficient, and missing facts will not be

18  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

19  **B.    Title IX**

20       Title IX provides that "[n]o person in the United States shall, on the basis of sex,

21  be excluded from participation in, be denied the benefits of, or be subjected to

22  discrimination under any education program or activity receiving Federal financial

1    assistance." 20 U.S.C. § 1681(a). In 2020, the Ninth Circuit recognized a pre-assault Title

2    IX claim, in addition to the previously recognized individual Title IX claim. *Karasek v.*

3    *Regents of Univ. of Calif.*, 956 F.3d 1093, 1104–05 (9th Cir. 2020) (en banc). An

4    individual Title IX claim arises from student-on-student or faculty-on-student sexual

5    harassment or assault and the school or university's deliberate indifference to the

6    harassment. *Id.* at 1105. A pre-assault Title IX claim, on the other hand, imposes "Title

7    IX liability when a school's official policy is one of deliberate indifference to sexual

8    harassment in any context subject to the school's control." *Id.* at 1113. Plaintiff here

9    brings a pre-assault claim against the University. Dkt. 46 at 16–17.

10          To sustain a pre-assault Title IX claim, a plaintiff must show:

11          (1) a school maintained a policy of deliberate indifference to reports of
            sexual misconduct, (2) which created a heightened risk of sexual
12          harassment that was known or obvious (3) in a context subject to the
            school's control, and (4) as a result, the plaintiff suffered harassment that
13          was "so severe, pervasive, and objectively offensive that it can be said to
            [have] deprive[d] the [plaintiff] of access to the educational opportunities or
14          benefits provided by the school."

15    *Karasek*, 956 F.3d at 1112 (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd.*

16    *of Educ.*, 526 U.S. 629, 650 (1999) (alterations in original)).

17          Whether Plaintiff can maintain a pre-assault Title IX claim against the University

18    depends on whether the University maintained a policy of "*deliberate indifference* to

19    sexual harassment in any context subject to the [University's] control." *Id.* at 1113

20    (emphasis added). A school's official policy is "deliberately indifferent" where the

21    school's "response to the harassment or lack thereof is clearly unreasonable in light of the

22

known circumstances." *Davis*, 526 U.S. at 648. A court may decide, in appropriate cases, that a school's response is "not 'clearly unreasonable' as a matter of law." *Id.* at 649.

Plaintiff argues that the University maintained the following deliberately indifferent practices and policies, which ultimately led to Culhane sexually assaulting Plaintiff following his transfer:

> (1) allowing students under investigation for sexual misconduct to transfer campuses at the student's request; (2) not revoking a student's transfer once that student has been found to have officially committed misconduct and violated students codes of conduct; (3) having no mechanism or reporting structure to communicate an offending student's prior bad acts that do not necessarily amount to a formal finding of misconduct; (4) having no mechanism or reporting structure to communicate victim concerns for future misconduct; (5) having no mechanism or reporting structure to communicate the offending student's history of ignoring university directives during a sexual assault investigation; (6) having no mechanism or reporting structure to communicate the student's poor disciplinary standing and history of sexual misconduct to the "new" campus; and (7) issuing insufficient sanctions upon a finding of sexual misconduct that were not reasonably calculated to deter future misconduct.

Dkt. 46 at 19. In sum, Plaintiff argues that the University's lack of policy in responding to and handling students with a history of sexual assault when such students request to transfer campuses amidst an ongoing investigation amounts to a policy of deliberate indifference.

The University's Title IX argument largely focuses on the fact that Plaintiff's sexual assault occurred on off-campus property and was not subject to its control, *see* Dkt. 43 at 5–12, but the University's transfer or change of campus policy is an official policy and indisputably subject to its control. Indeed, the University's Rule 30(b)(6) deponent testified that the University does not have a policy or procedure in place when a

1  student under disciplinary investigation applies for a change of campus. *See* Dkt. 47,

2  Exhibit 3 ("Zimmerman Depo.") at 18:13–19:14.

3       The University does also argue, though, that the decisions made in allowing

4  Culhane to transfer from the Vancouver campus to the Pullman campus were not clearly

5  unreasonable in light of the University's transfer policies, that the Court cannot question

6  the disciplinary decisions made by the University administrators (because the decisions

7  were not clearly unreasonable), and that it did in fact respond immediately to the

8  complaints launched by Stepanyuk and Ramirez. *See* Dkt. 50 at 6–8; *see also Davis*, 526

9  U.S. at 648 ("courts should refrain from second-guessing the disciplinary decisions made

10  by school administrators"); *Karasek*, 956 F.3d at 1108–09 (quoting *Davis*).[1] The Court

11  agrees with the University that the transfer policies as applied to Culhane's transfer are

12  not clearly unreasonably or, therefore, deliberately indifferent as a matter of law.

13       As described by the University's Rule 30(b)(6) deponent, the University is "one

14  system" with multiple satellite campuses—including Vancouver and Pullman. He

15  testified: "There's no circumstance where we would not grant a change of campus

16  request. It would only happen if the student decided that what was offered and what was

17  available did not meet their needs, and they withdrew their request, or the department

18  said it wasn't eligible." Zimmerman Depo. at 24:22–25:1. While Plaintiff asserts that the

19

20       [1] Although *Davis* was decided in the context of an individual Title IX claim (as opposed

21  to a pre-assault Title IX claim like Plaintiff brings here), the Ninth Circuit relied upon *Davis*,
among other individual Title IX cases, in reaching its decision in in *Karasek*. *See Karasek*, 956
F.3d at 1111–13. The Ninth Circuit held that the reasoning of *Davis* and its discussion of

22  "deliberate indifference" supports a theory of liability for pre-assault Title IX claims. *Id.* at 1113.

1   University should have prevented Culhane from changing campuses from Vancouver to

2   Pullman, such a sanction is simply not available under the University's campus structure.

3   If the University fairly concluded Culhane could remain enrolled, it is not clearly

4   unreasonable to permit him to transfer campuses. In other words, it is not deliberately

5   indifferent to allow a student to transfer consistent with University's policies.

6         Furthermore, the University was not deliberately indifferent to Culhane's risk of

7   harm because the actions it took in its investigation and discipline of Culhane were not

8   clearly unreasonable. It is undisputed that the University responded to the complaints

9   raised by Stepanyuk and Ramirez; indeed, once Ramirez ultimately decided to pursue an

10   investigation against Culhane, the University began its investigation. As a result of the

11   investigation launched by Ramirez's complaint, the University punished Culhane for his

12   actions through a nine-day suspension, an alcohol dependency assessment, a research and

13   reflection paper, and a probation statement. Culhane's progress was monitored by Adam

14   Jussel, the University's Assistant Dean of Students and Director of the Office of Student

15   Conduct at the time, and Jussel corresponded with Culhane about his probation statement

16   and research and reflection about consent. In fact, Jussel informed Culhane that his

17   understanding of consent was "off" and attempted to instruct Culhane on the correct

18   definition and appropriate boundaries. *See* Dkt. 48, Ex. D, at 94.

19         Plaintiff's higher education policy expert opines as to what the University should

20   have done in sanctioning and disciplining Culhane, *see* Dkt. 48, but the steps the

21   University could have taken to prevent this act of violence from happening does not

22   necessarily mean that it maintained a policy of deliberate indifference. The facts of this

1    case are also distinguishable from *Simpson v. University of Colorado* Boulder, 500 F.3d

2    1170 (10th Cir. 2007) (cited with approval by *Karasek*, 956 F.3d at 1112–23). In

3    *Simpson*, the Tenth Circuit held that a pre-assault Title IX claim could survive summary

4    judgment as the plaintiffs established a policy of indifference. The University of

5    Colorado's football program hosted high school recruits, who were to be shown "a good

6    time" and "were paired with female 'Ambassadors.'" *Id.* at 1173. Some recruits were

7    "promised an opportunity to have sex," and there was evidence that the coaching staff

8    knew of and encourage the conduct and that the university was aware of prior complaints

9    of sexual misconduct. *Id.* at 1173–74. In fact, the university had been warned by the

10   district attorney that it needed to supervise the recruits and implement sexual assault

11   prevention training. *Id.* at 1173. The Tenth Circuit held that "the risk of [sexual] assault

12   during recruiting visits was obvious" that the university maintained a policy of deliberate

13   indifference. *Id.* at 1180–81.

14        Here, the University sanctioned Culhane in accordance to its policies, and these

15   policies did not create an obvious risk of assault like the policies in *Simpson*. While

16   Plaintiff's expert testifies that the University's sanctions were "grossly insufficient,"[2] the

17   Court cannot say that the University maintained a policy of deliberate indifference to

18   reports of sexual misconduct. It timely responded to the complaints launched by

19   Stepanyuk and Ramirez against Culhane and allowed Culhane to transfer campuses in

20

21        [2] It is unclear whether "grossly insufficient" equates to the clearly unreasonable or
     deliberately indifferent standard, but the Court need not decide this issue to reach its conclusion.
22   Further, it not clear that Plaintiff's Title IX expert would be admissible under FRE 703.

1    accordance with its own change of campus policies. Further, the Court "should refrain

2    from second-guessing the disciplinary decisions made by school administrators." *Davis*,

3    526 U.S. at 648.

4         As the state of the law currently stands on pre-assault Title IX claims, the Court

5    agrees with the University that it did not maintain a policy of deliberate indifference as a

6    matter of law. Therefore, the University's motion for summary judgment on Plaintiff's

7    Title IX claim is GRANTED, and that claim dismissed with prejudice.

8    **C.**    **Negligence**

9         As a general rule, "'in the absence of a special relationship between the parties,

10   there is no duty to control the conduct of a third person so as to prevent him from causing

11   harm to another.'" *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 195 (2001)

12   (quoting *Richards v. Stanley*, 43 Cal.2d 60, 65 (1954)). Additionally, under the public

13   duty doctrine, the State is not liable for its negligent conduct even where a duty does exist

14   unless the duty was owed to the injured person and not merely the public in general.

15   *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988). Therefore, Plaintiff must establish

16   that the University owed her a duty to prevent Culhane from causing her harm.

17        Plaintiff thus argues that the University owed her a duty to provide for her safety

18   from sexual assault arising from: the University's obligation to not increase the danger to

19   foreseeable victims through its own conduct; Plaintiff's invitee status at a location where

20   the University exercises control; and the University's special relationship with Plaintiff

21   and Culhane. Dkt. 46 at 23.

22

### 1.     Duty via Affirmative Act

Plaintiff first argues that the University owed her a duty of reasonable care to refrain from causing foreseeable harm because it affirmatively acted and created a risk of harm to her. *Id.* (citing, *inter alia*, Restatement (Second) of Torts §§ 281 cmt. 3, 302, 323). The Washington State Supreme Court has recognized that, under Restatement § 302B, "a duty to third parties may arise in the limited circumstances that the actor's own affirmative act creates a recognizable high degree of risk of harm." *Robb v. City of Seattle*, 176 Wn.2d 427, 433 (2013) (internal citations omitted). Restatement § 302B, comment e, further clarifies that a duty to prevent harm to a third party arises "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account."

In *Robb*, the Washington State Supreme Court distinguished between an act or misfeasance and an omission or nonfeasance. Misfeasance "involves active misconduct resulting in positive injury to others" and "necessarily entails the creation of a new risk of harm to the plaintiff." *Robb*, 176 Wn.2d at 437 (internal citations omitted). "Nonfeasance consists of 'passive inaction or failure to take steps to protect others from harm.'" *Id.* (quoting *Lewis v. Krussel*, 101 Wn. App. 178, 184 (2000)).

Plaintiff argues that the University took two affirmative actions (misfeasance) that triggered a duty owed to her: first, that the University affirmatively granted Culhane's transfer request while Culhane had an active pending charge of sexual misconduct and,

1 second, that the University implemented inadequate sanctions. Dkt. 46 at 24. The

2 University, on the other hand, argues that these actions are mere nonfeasance.

3      The Court agrees with the University that the implementation of inadequate

4 sanctions (i.e., the failure to implement stricter sanctions) is nonfeasance. The sanctions

5 imposed by the University onto Culhane may have been insufficient as Plaintiff argues,

6 but the University's course of action in disciplining Culhane does not amount to more

7 than "failure to take steps to protect others from harm." *Robb*, 176 at 437 (internal

8 citation and quotation omitted). But whether the University affirmatively acted in

9 granting Culhane's transfer request is a closer call.

10      Plaintiff argues that the University affirmatively decided and allowed Culhane to

11 change campuses from Vancouver to Pullman despite the multiple sexual harassment

12 complaints made against him. The University argues that, under its structure, the change

13 of campus transfer process is routine and ministerial and not the affirmative act that

14 Plaintiff contemplates. Indeed, the University's 30(b)(6) deponent testified that "[t]here's

15 no circumstance where we would not grant a change of campus request." Zimmerman

16 Depo. at 24:22–25:1.

17      While the University processed Culhane's change of campus request and Culhane

18 moved to Pullman, in which "positive injury" to Plaintiff followed, the Court cannot say

19 that the University's acceptance of his transfer request was active misconduct as a matter

20 of law. The University did not affirmatively create a new risk within its system by

21 processing his transfer; Culhane was arguably a known risk to the University at the point

22 of transfer. Culhane remained a danger whether he was at the Vancouver campus or the

Pullman campus. The Court therefore agrees with the University that processing

Culhane's transfer request was not an affirmative act and was a "failure to take steps to

protect others from harm." *Robb*, 176 at 437 (internal citation and quotation omitted).

The Court thus concludes that the University did not owe Plaintiff a duty under an

affirmative action theory.

### 2.    Duty via Business Invitee

Plaintiff next argues that the University owed her a duty pursuant to her status as a

business invitee, relying on the principles found in *Johnson v. State*, 77 Wn. App. 934

(1995). In *Johnson*, a female student sued Washington State University for negligence

after she was abducted and raped late at night near her dormitory. *Id.* at 936–37. She

alleged that the University was negligent in failing to take reasonable steps to provide for

her safety, similar to Plaintiff's claims here. The Washington State Court of Appeals held

that the student in *Johnson* was "entitled to the status of an invitee because she was an

on-campus student resident who was attempting to gain access to her university

dormitory at the time she was attacked." *Id.* at 941. It is notable that the *Johnson*

did not adopt "a broad rule" entitling all university students invitee status for all purposes

while on university property. *Id.*; *see also id.* at 941 n.22 (contrasting the facts in *Johnson*

with *Leonardi v. Bradley Univ.*, 253 Ill. App. 3d 685 (1993), which concluded that a

student was not an invitee to the college when visiting a campus fraternity because the

student did not show that her presence was connected with the business of the college or

that the college received any benefit from her presence at the fraternity).

Plaintiff argues that she had invitee status at the time of the rape because the rape occurred at a location recognized and advertised by the University as associated with the school. She further advocates for a rule under *Johnson* that "there is no requirement that the actual rape occur on university property for the Defendant to incur a duty." Dkt. 46 at 25. The Court disagrees with this characterization of *Johnson*. In that case, the student was attempting to gain access to her university dormitory and, most importantly, on campus property. Here, Plaintiff was raped in off-campus housing—not on University property—and the University did not incur a duty of care because she was not an invitee at that particular point in time when the rape occurred.

The Court therefore concludes that the University did not owe Plaintiff a duty to protect her from harm because she did not maintain invitee status at the time of the assault.

### 3.    Duty via Special Relationship

Plaintiff additionally argues that the University owed her a duty because of its relationship with Plaintiff herself and because of its relationship with Culhane.

Plaintiff asserts that because she entrusted the University with her safety within the University's jurisdiction and because the University maintained control over the jurisdiction and Culhane, the University maintained a special relationship with her. However, the *Johnson* court held that "the university-student relationship does not in and of itself impose a duty upon universities to protect students from the actions of fellow students or third parties." 77 Wn. App. at 940 (quoting *Nero v. Kansas State Univ.*, 253 Kan. 567, 861 P.2d 768, 778 (1993)). Plaintiff attempts to distinguish her status as a

1   "foreseeable victim of a repeat offender on premises where Defendant admits it exercised

2   control over student conduct[,]" but this argument is unpersuasive. Plaintiff provides no

3   binding precedent to establish that she maintained a "special relationship" with the

4   University beyond her status as a student. The Court thus agrees with the University that

5   it did not owe Plaintiff a duty based on her relationship with the school.

6          Plaintiff next argues that the University owed a separate duty to her arising out of

7   its relationship with Culhane. Plaintiff predicates her argument on Restatement (Second)

8   of Torts § 319, which states that "[o]ne who takes charge of a third person whom he

9   knows or should know to be likely to cause bodily harm to others if not controlled is

10  under a duty to exercise reasonable care to control the third person to prevent him from

11  doing such harm." Plaintiff asserts that the University "took charge" of Culhane on

12  August 1, 2021[7] when the University placed him on probation. Dkt. 46 at 28–29.

13         The University correctly highlights that the majority of Washington law discussing

14  § 319's take charge duty relates to the relationship between parole officers and parolees.

15  For example, in *Taggart v. State*, 118 Wn.2d 195 (1992), the Washington State Supreme

16  Court held that "parole officers have a duty to protect others from reasonably foreseeable

17  dangers engendered by parolees' dangerous propensities" pursuant to § 319. *Id.* at 224. In

18  determining that parole officers have "taken charge" of the parolees they supervise, the

19  Washington Supreme Court considered a number of factors, including:

20         Parole officers have the statutory authority under RCW 72.04A.080 to
           supervise parolees. The State can regulate a parolee's movements within
21         the state, require the parolee to report to a parole officer, impose special
           conditions such as refraining from using alcohol or undergoing drug
22         rehabilitation or psychiatric treatment, and order the parolee not to possess

firearms. The parole officer is the person through whom the State ensures that the parolee obeys the terms of his or her parole. Additionally, parole officers are, or should be, aware of their parolees' criminal histories, and monitor, or should monitor, their parolees' progress during parole.

*Id.* at 219–20. The University contends that none of these factors existed within the relationship between Culhane and the University and that, therefore, § 319's duty does not apply in this case.

The Court agrees that the University's level of control over Culhane did not amount to a substantial degree of control over his freedom to predicate a § 319 duty. The University did exercise some control over Culhane through the various disciplinary measures implemented following the sexual harassment and misconduct investigations, but its control is certainly less than the control a parole officer exercises over a parolee. The Washington State Supreme Court similarly distinguished from parole officer–parolee cases and found that the Department of Social and Health Services did not owe a § 319 duty to protect the public from the criminal acts of dependent children. *See Sheikh v. Choe*, 156 Wn.2d 441, 448–55 (2006).

Plaintiff has not provided any binding or persuasive authority to establish that the University "took charge" of Culhane when it placed him on disciplinary probation. The Court therefore agrees with the University that it did not have a special relationship with Culhane to predicate a § 319 duty to protect the public.

In conclusion, Plaintiff has not established that the University owed her a duty to protect her from third-party harm. The University's motion for summary judgment on Plaintiff's negligence claim is GRANTED, and that claim dismissed with prejudice.

1    **D.    State Law Discrimination Claims**

2         Plaintiff also brings claims against the University for discrimination in violation of

3    RCW 28B.110, *et seq.*, and the Washington Law Against Discrimination, RCW 49.60, *et*

4    *seq.* Dkt. 1-2, ¶¶ 41–52.

5         Washington law specifically prohibits "discrimination on the basis of gender

6    against any student in the institutions of higher education of Washington state." RCW

7    28B.110.010. But Washington courts generally look to federal law when analyzing

8    discrimination claims. *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001),

9    *overruled on other grounds Mikkelsen v.Pub. Util. Dist. No. 1. Of Kittitas Cty.*, 189

10   Wn.2d 516 (2017); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir.

11   2003). The Court has concluded that Plaintiff cannot maintain her Title IX claim against

12   the University because there is no policy of deliberate indifference as a matter of law. As

13   such, her claim under RCW 28B.110, *et seq.*, fails a matter of law. The University's

14   motion for summary judgment on Plaintiff's RCW 28B.110, *et seq.*, claim is GRANTED,

15   and that claim dismissed with prejudice.

16        To state a prima facie public accommodation WLAD claim, a plaintiff must show

17   that:

18        (1) the plaintiff is a member of a protected class, (2) the defendant's
          establishment is a place of public accommodation, (3) the defendant
19        discriminated against the plaintiff when it did not treat the plaintiff in a
          manner comparable to the treatment it provides to persons outside that
20        class, and (4) the plaintiff's protected status was a substantial factor that
          caused the discrimination.

21

22

1  *Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 853 (2019) (internal citation omitted).

2  Plaintiff argues that she has met her burden and that the Court must deny the University's

3  motion as (1) she is a member of a protected class as she is female, (2) the University is

4  a place of public accommodation, (3) the University "discriminated against Plaintiff by

5  failing to take adequate steps to protect her as a foreseeable female victim of Culhane's

6  sexual misconduct," and (4) her sex was a substantial factor that caused the

7  discrimination, i.e. the rape. Dkt. 46 at 34.

8      It is uncontroverted that "[b]eing raped is, at minimum, an act of discrimination

9  based on sex." *Little v. Windermere Relocation, Inc.*, 301 F.2d 958 (9th Cir. 2002). The

10  issue with Plaintiff's WLAD theory, however, is that she must show that the University

11  *itself* discriminated against her. She argues that the question is "whether Defendant's

12  conduct led to the discrimination," relying on *Floeting*. Dkt 46 at 33. In *Floeting*, the

13  Washington State Supreme Court stated that the WLAD liability inquiry focuses "on

14  whether *actions* resulted in discrimination, not whether the proprietor of a place of public

15  accommodation intended to discriminate." 192 Wn.2d at 853 (emphasis in original). But

16  this statement was made in context of deciding whether employers are strictly liable for

17  the actions of their employees under WLAD. *See id.* at 852–53. The essential element

18  that Plaintiff must prove is that the University discriminated against her when it did not

19  treat her in a manner comparable to the treatment it provides to persons outside that

20  class.[3]

21

22      [3] As the Court has concluded that Plaintiff must show that the University discriminated against her—not that its actions led to discrimination by a third party—the Court does not

1    The Court has concluded that the University did not discriminate against Plaintiff

2    as she argues; the University's discipline of Culhane was not clearly unreasonable as a

3    matter of law. Further, Plaintiff has not presented specific, significant probative evidence

4    that her sex was a substantial factor that caused the University's alleged discrimination in

5    failing to take adequate steps to protect her as a foreseeable female victim. *See*

6    *Matsushita*, 475 U.S. at 586.

7    The moving party is entitled to judgment as a matter of law when the nonmoving

8    party fails to make a sufficient showing on an essential element of a claim in the case on

9    which the nonmoving party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

10   Plaintiff has failed to make a sufficient showing on two essential elements of her WLAD

11   claim. The University's motion for summary judgment on Plaintiff's WLAD claim is

12   GRANTED, and that claim dismissed with prejudice.

13

14

15

16

17

18

19

20

21   address whether the apartment where the rape occurred is a place of public accommodation. The
     University is a place of public accommodation, *see* RCW 49.60.040(2), and is subject to WLAD

22   if it engages in discrimination.

### III.   ORDER

Therefore, it is hereby **ORDERED** that Defendant Washington State University's motion for summary judgment, Dkt. 16, is **GRANTED**. It is further **ORDERED** that the parties' motions in limine, Dkts. 53, 54, are **DENIED as moot**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 21st day of May, 2021.

_____
BENJAMIN H. SETTLE
United States District Judge